## Exhibit A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| WARREN RESOURCES, INC., *et al.*,[1] | § | Case No. 16-32760 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |

**ORDER (I) AUTHORIZING THE
RETENTION AND EMPLOYMENT OF JEFFERIES LLC
AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS
IN POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a),
*NUNC PRO TUNC* TO THE PETITION DATE, (II) WAIVING CERTAIN
TIME-KEEPING REQUIREMENTS, AND (III) GRANTING RELATED RELIEF**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (a) authorizing the Debtors to retain and employ Jefferies as their investment banker pursuant to sections 327 and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Bankruptcy Rules"), *nunc pro tunc* to the Petition Date, pursuant to the terms and subject to the conditions of the Engagement Letter; (b) waiving and modifying certain of the time keeping requirements of Bankruptcy Rule 2016(a), the Trustee Guidelines and any other guidelines regarding submission and approval of fee applications; and (c) granting related relief, all as more fully described in the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Warren Resources, Inc. (4080); (ii) Warren E&P, Inc. (4052); (iii) Warren Resources of California, Inc. (0072); (iv) Warren Marcellus, LLC (0150); (v) Warren Energy Services, LLC (4748); and (vi) Warren Management Corp.  The Debtors' service address is: 11 Greenway Plaza, Suite 3050, Houston, Texas 77046.

[2] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Application or Engagement Letter, as applicable.

Application; and the Court having jurisdiction over this matter; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other or further notice need be provided; and the Court having determined that the employment of Jefferies is necessary and in the best interest of the estates and their creditors; and the Court being satisfied based on the statements in the Morgner Declaration that Jefferies does not hold or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and upon all of the proceedings had before this Court, and after due deliberation and good and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to retain and employ Jefferies as their investment banker in these chapter 11 cases, pursuant to the terms and subject to the conditions set forth in the Engagement Letter attached hereto as <u>Exhibit 1</u>, *nunc pro tunc* to the Petition Date.

3.      Except to the extent set forth herein, the Engagement Letter, including, without limitation, the Fee and Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code, and the Debtors are authorized to pay, reimburse, and indemnify Jefferies in accordance with the terms and conditions of, and at the times specified in, the Engagement Letter.

4.      Jefferies shall file applications for allowance of compensation and reimbursement of expenses pursuant to and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, such Bankruptcy Rules or Local Bankruptcy Rules as may then be

applicable, and any other applicable orders and procedures of this Court; *provided*, *however*, that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any order of this Court, the Trustee Guidelines, any other guidelines regarding submission and approval of fee applications, and any other applicable orders or procedures of the Court, Jefferies' professionals shall be required only to keep reasonably detailed summary time records in one-half hour increments, which time records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.

5.      The fees and expenses payable to Jefferies pursuant to the Engagement Letter shall be subject to review pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by the U.S. Trustee, who, for the avoidance of doubt, shall retain all rights to respond or object to Jefferies' interim and final applications on all grounds, including, but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code.

6.      The indemnification, contribution and reimbursement provisions included in Schedule A to the Engagement Letter are approved, subject during the pendency of these chapter 11 cases to the following modifications:

   a.      subject to the provisions of subparagraphs (b) and (d) below, the Debtors are authorized to indemnify the Indemnified Persons in accordance with the Engagement Letter for any claim arising from, related to, or in connection with their performance of the services described in the Engagement Letter; provided, however, that the Indemnified Persons shall not be indemnified for any claim arising from services other than the services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

   b.      notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any person or provide

HOU:3696428.1

contribution or reimbursement to any person for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from that person's gross negligence or willful misconduct, or (ii) for a contractual dispute in which the Debtors allege breach of Jefferies' obligations under the Engagement Letter unless this Court determines that indemnification, contribution or reimbursement would be permissible pursuant to applicable law or (iii) settled prior to a judicial determination as to sub-clauses (i) or (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order;

c.     If, during the pendency of these chapter 11 cases, the indemnification provided in Schedule A to the Engagement Letter is held unenforceable by reason of the exclusions set forth in paragraph (b) above (i.e. gross negligence, willful misconduct, or for a contractual dispute in which the Debtors allege the breach of Jefferies' obligations under the Engagement Letter, unless the Court determines that indemnification would be permissible pursuant to applicable law), and Jefferies makes a claim for the payment of any amounts by the Debtors on account of the Debtors' contribution obligations, then the limitations on Jefferies' contribution obligations set forth in the second and third sentences of the fifth paragraph of Schedule A shall not apply; and

d.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Jefferies believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Jefferies must file an application before this Court and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment; provided, however, that for the avoidance of doubt, this subparagraph (d) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify Jefferies.

7.     To the extent that there may be any inconsistency between the terms of the Application, the Morgner Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

8.      The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted by this Order.

9.      Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.  Further, notwithstanding anything in the Engagement Letter, the Court shall retain exclusive jurisdiction during the pendency of these cases to resolve any disputes arising from or related to the Engagement Letter and Jefferies retention pursuant to the Application and this Order.

Dated:  _____, 2016     _____

Houston, Texas                          THE HONORABLE MARVIN ISGUR
                                        UNITED STATES BANKRUPTCY JUDGE

HOU:3696428.1

## **Exhibit 1**

**Engagement Letter**

Engagement Letter

Strictly Confidential

As of February 19, 2016

Warren Resources, Inc.
1331 17th Street, Suite 720
Denver, CO 80202

Attention:   James A. Watt
                   President and Chief Executive Officer

Re:      Advisory Services.

This letter agreement (this "<u>Agreement</u>") confirms that Warren Resources, Inc., a Maryland corporation (the "<u>Company</u>"), has engaged Jefferies LLC ("<u>Jefferies</u>") to act as financial advisor to the Company and in such other capacities, in each case, as set forth herein.

1.      Scope of Engagement.

(a)      <u>Restructuring</u>. During the term of this engagement, Jefferies will provide the following services, as may be appropriate and requested by the Company in connection with any Restructuring (as defined below):

(i)      provide financial advice and assistance to the Company in connection with analyzing, structuring, negotiating and effecting (including providing valuation analyses as appropriate), and acting as a financial advisor to the Company in connection with, any restructuring of the Company's currently outstanding indebtedness (the "<u>Existing Debt</u>") (including, without limitation, the Company's First Lien Term Loan due 2020, its Second Lien Term Notes due 2020 and its 9.0% Senior Notes due 2022) through any offer by the Company with respect to any outstanding Company indebtedness, any solicitation of votes, approvals, or consents giving effect thereto (including with respect to a prepackaged or prenegotiated plan of reorganization or other plan pursuant to chapter 11, Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), the execution of any agreement giving effect thereto, any offer by any party to convert, exchange or acquire any outstanding Company indebtedness, or any similar balance sheet restructuring involving the Company (any such transaction described in this paragraph being referred to herein as a "<u>Restructuring</u>"); and

(ii)      become familiar with, to the extent Jefferies deems appropriate, and analyzing the business, operations, properties, financial condition and prospects of the Company;

(iii)      advise the Company on the current state of the "restructuring market";

Warren Resources, Inc.
February 19, 2016
Page 2

       (iv)     assist and advise the Company in developing a general strategy for accomplishing a Restructuring;

       (v)     assist and advise the Company in implementing a Restructuring;

       (vi)     assist and advise the Company in evaluating and analyzing a Restructuring, including the value of the securities or debt instruments, if any, that may be issued or entered into in any Restructuring; and

       (vii)     render such other financial advisory services as may from time to time be agreed upon by the Company and Jefferies.

       (b)     <u>M&A Transaction</u>.  Furthermore, during the term of this engagement, and as and if agreed upon by the Company and Jefferies for each M&A Transaction (as defined below), Jefferies will provide the Company with financial advice and assistance in connection with a possible sale, disposition or other business transaction or series of transactions involving all or a majority of the equity or the assets of the Company, whether directly or indirectly and through any form of transaction, including, without limitation, merger, reverse merger, liquidation, stock purchase, asset purchase, recapitalization, reorganization, consolidation, amalgamation, a sale under section 363 of the Bankruptcy Code (and including under a prepackaged or pre-negotiated Plan of Reorganization or other plan pursuant to the Bankruptcy Code) or other transaction (any of the foregoing, an "<u>M&A Transaction</u>").  With respect to each M&A Transaction, such financial advice and assistance shall include, without limitation, identifying and contacting potential parties to such M&A Transaction, analyzing and proposing transaction structures, and providing customary valuation services.

       (c)     <u>Financing</u>.  The Company hereby retains and authorizes Jefferies, during the term of this engagement, to act as manager, bookrunner, placement agent, arranger, underwriter and/or initial purchaser, as the case may be, in connection with the sale and/or placement, whether in one or more public or private transactions, of (1) common equity, preferred equity, and/or equity-linked securities of the Company (regardless of whether sold by the Company or its securityholders), including, without limitation, convertible debt securities (individually and collectively, "<u>Equity Securities</u>"), and/or (2) notes, bonds, debentures and/or other debt securities or bank debt of the Company, including, without limitation, mezzanine and asset-backed securities, but not including convertible debt securities (individually and collectively, "<u>Debt</u>").  In this Agreement, (A) any or a combination of Debt and/or Equity Securities, is referred to as an "<u>Instrument</u>" or "<u>Instruments</u>", (B) each such sale and/or placement of Instruments mentioned in this paragraph (c) is referred to as a "<u>Financing</u>" and (C) the term "<u>Transaction</u>" means any Financing, Restructuring or M&A Transaction.  For the avoidance of doubt, if a Transaction is consummated in more than one issuance or tranche, each shall be deemed to be a separate Transaction for the purposes of this Agreement.

       (d)     <u>Fairness Opinion</u>.  In addition, if requested by the Company with respect to an M&A Transaction (other than an M&A Transaction effected through the Company's becoming a debtor under the Bankruptcy Code), and agreed upon by Jefferies, Jefferies will render in

Warren Resources, Inc.
February 19, 2016
Page 3

accordance with its customary practices a written opinion (the "Opinion") to the Company's board of directors or appropriate committee thereof (the "Board") as to the fairness, from a financial point of view, to the Company or holders of the Company's common stock, as applicable, of such M&A Transaction (or the consideration to be paid or the exchange ratio to be applied, as appropriate, pursuant thereto).

2.      Cooperation.

        (a)      The Company shall furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Company that the Company believes are relevant to the Transactions contemplated hereby and all information and data that Jefferies shall reasonably request in connection with Jefferies' activities and services hereunder, and, if necessary, all solicitation materials prepared by the Company (and provided to Jefferies for comments) with respect to the Company (which materials the Company agrees shall not contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading). In addition, the Company shall provide Jefferies full access, as reasonably requested, to the Company's officers, directors, employees and professional advisors. The Company agrees to promptly advise Jefferies of all developments materially affecting the Company, any proposed Transaction or the accuracy of the information previously furnished to Jefferies by or on behalf of the Company, and agrees to take commercially reasonable efforts to ensure that no material initiatives relating to the proposed Restructuring will be taken without Jefferies having been informed in advance thereof. If the Company or, to the Company's knowledge, any of its stockholders, affiliates or other advisors or representatives are contacted by any person concerning a potential Transaction, the Company will inform Jefferies of such inquiry and all relevant details thereof.

        (b)      The Company further acknowledges that Jefferies, except to the extent Jefferies, in its sole discretion, deems necessary to establish applicable "due diligence" defenses, (i) will be relying on information and data provided by the Company and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data and (iii) has not made, and will not make, any physical inspection or appraisal of the properties or assets of the Company and with respect to any financial forecasts that may be furnished to or discussed with Jefferies by the Company, Jefferies will assume that such forecasts have been reasonably prepared and reflect the best then currently available estimates and judgments of the Company's management as to the expected future financial performance of the Company.

        (c)      The Company authorizes Jefferies to distribute to prospective investors in a Financing a prospectus or confidential offering, placement or information memorandum and other disclosure materials prepared or reviewed and approved by the Company for use in connection with such Financing (for purposes of the immediately following sentence and the indemnification provisions in Schedule A, together with any reports, statements and other documents publicly filed by the Company with the Securities and Exchange Commission

Warren Resources, Inc.
February 19, 2016
Page 4

pursuant to Sections 13(a), 13(c), 14 and 15(d) of the U.S. Securities Exchange Act of 1934, as amended, and any Rating Agency Presentation (as defined below), in each case, if applicable, the "Materials"), which Materials shall be subject to Jefferies' review prior to distribution. The Company acknowledges that the Company shall be solely responsible for the accuracy and completeness of the Materials and all other information prepared or reviewed and approved by the Company that is distributed in connection with a Financing, and agrees that such Materials and such information shall not contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading. The Company further agrees that it will (i) provide Jefferies as soon as practicable but in any event no later than is reasonable and customary for the Financing, with a complete initial draft of the Materials, and (ii) provide Jefferies, if applicable, as soon as practicable but in any event no later than is reasonable and customary for a Financing of such type, with complete printed preliminary Materials suitable for use in a customary "road show" relating to the Financing (including the Required Financial Information) in such number of copies as Jefferies (and, if any, the other financial advisers in the Financing) reasonably requests. The Company also agrees that, if applicable, it will promptly commence the preparation of a presentation to Standard & Poor's Rating Group and Moody's Investors Service, Inc. for a rating on any applicable securities or debt instruments (a "Rating Agency Presentation").

(d)     Prior to amending or supplementing the Materials, the Company shall furnish to Jefferies for review a copy of each such proposed amendment or supplement. If, prior to finalizing the terms of a Financing, any event shall occur or condition shall exist as a result of which it is necessary to amend or supplement the Materials in order to make the statements therein, in the light of the circumstances in which they are made, not misleading, the Company shall promptly prepare and furnish to Jefferies such amendments or supplements.

(e)     The Company shall comply with all federal and state securities laws and regulations applicable to the Restructuring.

(f)     The Company agrees that Jefferies will be entitled to rely on the representations, warranties and covenants of the Company and the investors in the Financing that are set forth in the definitive agreement between the Company and the investors in such Financing. In the event that circumstances have changed such that this engagement requires more of Jefferies' time and efforts than originally anticipated, the Company agrees to meet and confer with Jefferies in good faith to determine the appropriate additional fees for Jefferies' services.

3.     Use of Name, Opinion, Advice, etc.

(a)     No information or advice provided (other than any information or advice relating to the U.S. tax treatment and U.S. tax structure of any Transaction), or Opinion rendered, by Jefferies may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Jefferies' prior written consent, which shall not be withheld unreasonably (it being understood that any description of reference to the Opinion shall require Jefferies reasonable prior consent, in Jefferies' sole discretion). In addition, the

Warren Resources, Inc.
February 19, 2016
Page 5

Company agrees that any reference to Jefferies in any release, communication or other material disclosed or published by the Company is subject to Jefferies' prior approval, which shall not be unreasonably withheld or delayed; it being understood that any description or reference to the Opinion shall require Jefferies' reasonable prior consent, in Jefferies' sole discretion.

(b)     Jefferies' advice is solely for the use and information of the Company's management and the Board, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person.

4.     <u>Compensation</u>. The Company agrees to pay Jefferies each of the following:

(a)     A monthly fee (the "<u>Monthly Fee</u>") equal to $100,000 per month commencing as of January 15, 2016, and increasing to $125,000 per month commencing on March 15, 2016, until the expiration or termination of this Agreement. The first Monthly Fee shall be payable as of January 15, 2016, and each subsequent Monthly Fee shall be payable in advance on the fifteenth day of each subsequent calendar month during the term hereof.

(b)     Promptly upon Jefferies' having informed the Company that Jefferies is prepared to deliver an Opinion (regardless of the conclusion reached therein), an opinion fee equal to $500,000 (the "<u>Opinion Fee</u>"). The Opinion Fee will be credited, to the extent previously paid, once against the M&A Fee, if any, payable to Jefferies by the Company in respect of the M&A Transaction to which the Opinion relates.

(c)     Promptly upon the consummation of a Restructuring, a transaction fee (the "<u>Restructuring Fee</u>") in an amount equal to 0.95% of the aggregate principal amount of all indebtedness subject to the Restructuring.

(d)     Promptly upon the earlier of the consummation of an M&A Transaction or a confirmation of a plan of reorganization under the Bankruptcy Code, a transaction fee (the "<u>M&A Fee</u>") equal to 0.95% of Transaction Value (as defined below) of such M&A Transaction.

(e)     Promptly upon the consummation of each Financing, a fee (a "<u>Financing Fee</u>") equal to the sum, without duplication, of:

(i)     2.0% of the aggregate principal amount, without duplication, of all newly issued first lien Debt issued, incurred or made available to be issued or incurred pursuant to such Financing, other than in exchange for any Existing Senior Debt;

(ii)     3.0% of the aggregate principal amount, without duplication, of all other newly issued Debt issued, incurred or made available to be issued or incurred pursuant to such Financing, other than in exchange for any Existing Senior Debt; and

Warren Resources, Inc.
February 19, 2016
Page 6

          (iii)     4.5% of the aggregate gross proceeds of any newly issued Equity Securities issued pursuant to such Financing, other than in exchange for any Existing Senior Debt.

Notwithstanding any provision hereof to the contrary, (A) the foregoing Financing Fees will not apply to any Transaction other than a Financing and (B) no Financing Fee shall be payable hereunder in respect of any Instruments issued or incurred or made available to be issued or incurred in exchange for any Existing Senior Debt. Furthermore, the parties hereto acknowledge and agree that notwithstanding any provision hereof to the contrary, the Company may at any time engage any financial advisory, valuation, investment banking or similar firm to provide a fairness opinion with respect to a Restructuring. If the Company pays any fees or expenses to any such firm in connection with services relating to such a fairness opinion (all such fees and expenses being referred to herein as "Reimbursable Fairness Opinion Costs"), then immediately upon written demand by the Company (which shall include reasonably detailed documentation of such Reimbursable Fairness Opinion Costs), Jefferies shall rebate to the Company an amount of fees paid hereunder equal to the lesser of (1) the aggregate amount of such Reimbursable Fairness Opinion Costs), (2) the aggregate amount of fees paid hereunder and (3) $250,000.

          (f)     Promptly upon delivery of a strategic alternatives report that describes the current state of the exploration and production sector, the energy capital markets and related restructuring landscape, a report fee in the amount of $300,000.

          (g)     As used herein "Transaction Value" shall mean (A) the aggregate amount of cash and the fair market value (determined as set forth below) of any securities or other property or consideration directly or indirectly paid or payable in connection with an M&A Transaction, including, without limitation, (1) any dividends or distributions or any stock redemptions or repurchases outside the normal course of business; (2) all amounts payable in relation to, or other value ascribed in the M&A Transaction (including the form of "rollover" options or warrants) in respect of, warrants, options or other convertible securities; (3) the full amount of any consideration placed in escrow or otherwise withheld to support the Company's (or its stockholders') indemnification or similar obligations under the definitive documents with respect to the M&A Transaction, (4) the full amount of any contingent consideration to be paid in the future; and (5) the full amount of any payments in installments; plus (B) all indebtedness for borrowed money, pension liabilities, guarantees, capitalized leases and other liabilities (whether consolidated, off-balance sheet or otherwise) and preferred stock directly or indirectly assumed, refinanced, retired or extinguished (and all payments made and expenses incurred in connection therewith, including, without limitation, prepayment premiums and defeasance costs) in connection with the M&A Transaction (including, in the case of the sale, exchange or purchase of equity securities, any such liabilities outstanding at the closing of the M&A Transaction) and the value of operating leases (calculated by multiplying the latest quarter annualized operating lease rental expense prior to closing by 4); plus (C) in the case of an M&A Transaction structured as a sale, transfer, exchange or purchase of equity securities, if less than 100% of the equity of the Company is transferred in the M&A Transaction, the value of any retained interest in the Company based on the value

Warren Resources, Inc.
February 19, 2016
Page 7

paid for or ascribed to the equity interests transferred in the M&A Transaction; plus (D) in the case of an M&A Transaction structured as a sale, transfer, exchange or disposition of assets, if less than 100% of the assets of the Company are transferred in the M&A Transaction, the fair market value of any assets (including, without limitation, accounts receivable, inventory, investments, cash and cash equivalents) retained by the Company; plus (E) in the case of a joint venture or similar transaction (a "Joint Venture"), the aggregate value of the proceeds, assets and other consideration contributed or to be contributed to such Joint Venture by all parties to such Joint Venture in connection with the M&A Transaction (which shall be deemed to include up-front payments, milestone payments, research and development payments, licensing fees and royalties, installment amounts, future and contingent payments and other payments), including, without limitation, cash, notes, securities, intellectual property, licenses, marketing or distribution rights and other property and the amount of any liabilities assumed by such Joint Venture.  For purposes of computing the Transaction Fee, (x) publicly traded securities shall be valued at the average of their 4:00 p.m. closing prices (as reported in The Wall Street Journal) for the five trading days prior to the date that is two business days prior to the date of announcement of the M&A Transaction and (y) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Company and Jefferies.

(h)     If, following or in connection with the termination, abandonment or failure to occur of any proposed M&A Transaction in respect of which the Company entered into an agreement during the term of this Agreement or during the 6-month period following the effective date of termination of this Agreement, the Company or any affiliate is entitled to receive a break-up, termination, "topping," expense reimbursement, earnest money payment or similar fee or payment (including, without limitation, any judgment for damages or amount in settlement of any dispute as a result of such termination, abandonment or failure to occur) (each and together, "Termination Payments"), Jefferies shall be entitled to a cash fee (the "Break-Up Fee"), payable promptly following the Company's or such affiliate's receipt of such amount, equal to 25% of the aggregate amount of all Termination Payments paid to the Company or such affiliate; provided, however, that the Break-Up Fee shall not be greater than the M&A Fee that would have been payable had the proposed M&A Transaction been consummated; provided, further however that the Break-Up Fee shall be reduced by the amount of any previously paid Fairness Opinion Fee in respect of a Fairness Opinion relating to such M&A Transaction.

(i)     For the avoidance of doubt, (i) in the instance of an M&A Transaction, the applicable fee will be paid at the earlier of the closing of the sale or the consummation of a Restructuring and (ii) in the event that a Transaction is both an M&A Transaction and a Restructuring, Jefferies will be due the greater of (but not both) the Restructuring Fee and the M&A Fee.

(j)     In the event the Company requests that Jefferies advise the Company with respect to a consent solicitation that is not related to or pursued in connection with a Restructuring, the Company and Jefferies shall mutually agree upon a reasonable fee for such services.

Warren Resources, Inc.
February 19, 2016
Page 8

     5.      Expenses. In addition to any fees that may be paid to Jefferies hereunder, regardless of whether any Transaction occurs, the Company will reimburse Jefferies, promptly upon receipt of an invoice therefor, for all reasonable and documented out-of-pocket expenses (including reasonable fees and expenses of not more than one law firm acting as counsel to Jefferies, and the reasonable fees and expenses of any other independent experts retained by Jefferies with the prior written consent of the Company) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated hereunder; *provided, however*, that such reimbursable out-of-pocket expenses shall not exceed $50,000 (excluding the fees and expenses of Jefferies' legal counsel) in the aggregate without the consent of the Company, and that such reimbursable out-of-pocket expenses shall not include any expenses for first class travel (it being understood that business class travel for flights over four hours long shall be permitted).

     6.      Indemnification, etc. As further consideration under this Agreement, the Company shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A. The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement. Neither Jefferies nor its affiliates shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof.

     7.      Termination. Jefferies' engagement hereunder will commence upon the execution of this Agreement by both the Company and Jefferies, and will terminate automatically on the first anniversary of the date hereof (except that this Agreement shall not automatically terminate in the event that the Company becomes a debtor under the Bankruptcy Code), unless earlier terminated by either party hereto by written notice to the other. This Agreement may be terminated at any time by either party for the other party's material breach hereof upon at least five (5) business days prior written notice and an opportunity to cure such breach during such five (5) business day period. If the breaching party cures the breach in question during such five (5) business day period, the non-breaching party shall not have the right to terminate this Agreement as a result of such breach. A termination of this Agreement by either party for the other party's material breach hereof is referred to herein as a "Justified Termination" by the party exercising such right to terminate. Furthermore, notwithstanding any provision hereof to the contrary, this Agreement may be terminated immediately by either party hereto upon written notice of termination by the terminating party to the other. Upon any termination of this Agreement, the Company shall promptly pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. In the event of a Justified Termination by Jefferies or any other termination of this Agreement pursuant to its terms (other than a Justified Termination by the Company), Jefferies shall be entitled to the applicable fee or fees set forth in Section 4 if, at any time prior to six months from the effective date of termination of this Agreement, the Company consummates, or enters into an agreement that subsequently results in, a Transaction. Any such fee shall be paid as set forth in Section 4. However, Jefferies shall not be entitled to any such fee in the event of a Justified Termination by the Company. Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3 through 6, 7, 9 through 167, and Schedule A, each of which shall survive such termination.

Warren Resources, Inc.
February 19, 2016
Page 9

8.  Other Advisors.

(a)  The Company shall notify Jefferies prior to retaining an additional financial advisor in connection with a Transaction.  In the event that the Company elects to retain an additional financial advisor in connection with a Transaction (i) Jefferies' fees shall not be reduced or otherwise affected on account of such retention, except as provided expressly in Section 4(e) hereof and (ii) no action or omission of such financial advisor shall in any way be attributed to Jefferies or otherwise affect Jefferies' rights or the Company's obligations hereunder (including, without limitation, with respect to Schedule A attached hereto).  In the event that Jefferies engages in a marketing process with respect to any securities or debt instruments (including with current holders of debt or equity issued by the Company), Jefferies and the Company will discuss implementing "clear market" restrictions on the Company's ability to sell or offer securities or debt instruments.

(b)  Notwithstanding the Company's obligations hereunder, including, but not limited to, their obligation to pay the fees and expenses of Jefferies and to indemnify Jefferies, it is understood and agreed that Jefferies' sole and exclusive client is the Company, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

9.  Disclaimer.

(a)  The Company acknowledges that Jefferies' direct parent, Jefferies Group LLC, is a full service financial institution engaged in a wide range of investment banking and other activities (including investment management, corporate finance, securities issuing, trading and research and brokerage activities), and that Jefferies Group LLC's ultimate parent, Leucadia National Corporation (collectively with its subsidiaries and affiliates (including Jefferies Group LLC), the "Jefferies Group"), is a diversified holding company engaged through its consolidated subsidiaries in a variety of businesses, in each case from which conflicting interests, or duties, may arise.  Information that is held elsewhere within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Company under this Agreement.  Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Company or utilize for the Company's benefit any non-public information acquired in the course of providing services to any other party, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business.  In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Company and of potential participants in the transactions contemplated hereby for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities.  Jefferies recognizes its responsibility for compliance with federal securities laws and regulations in connection with such activities.  Further, the Company acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies'

Warren Resources, Inc.
February 19, 2016
Page 10

investment banking department, and may have an adverse effect on the Company's interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences. The Jefferies Group, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the transactions contemplated hereby.

(b)     The Company acknowledges and agrees that (i) Jefferies will act as an independent contractor hereunder, its responsibility is solely owed to the Company and contractual in nature, and Jefferies does not owe the Company, or any other person or entity (including, without limitation, any securityholders, affiliates, creditors or employees of the Company), any fiduciary or similar duty as a result of its engagement hereunder or otherwise, (ii) Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Company, (iii) Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction, (iv) the Company has consulted, and will consult, as appropriate, with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and that Jefferies and its affiliates shall have no responsibility or liability with respect thereto, and (v) the Company is capable of evaluating the merits and risks of such transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of such transactions and fees.

10.     Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

11.     Exclusive Jurisdiction.  Except as set forth below, the parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity of this Agreement, any alleged breach of this Agreement, the engagement contemplated by this Agreement or the determination of the scope of applicability of this Agreement to this Section 11 (any of the foregoing, a "Claim") shall be commenced in the Commercial Division of the Supreme Court of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction over the adjudication of such matters and shall decide the merits of each claim on the basis of the laws of the State of New York. The Company and Jefferies agree and consent to personal jurisdiction, service of process and venue of such courts, waive all right to trial by jury for any claim and agree not to assert the defense of *forum non-conveniens*. The Company and Jefferies also agree that service of process may be effected through next-day delivery using a nationally-recognized overnight courier, or personal delivery, to the addresses set forth or referred to in Section 14 hereof. The non-prevailing party shall pay all of the prevailing party's costs and expenses (including, without limitation, reasonable fees and expenses of counsel) in an enforcement proceeding if the court in such proceeding determines that the prevailing party is entitled to recover amounts due hereunder. The Company and Jefferies further agree that a final, non-appealable judgment in respect of any claim brought in any such court shall be binding and may be enforced in any other court having jurisdiction over the party against whom the judgment is sought to be enforced. In addition, the Company agrees

Warren Resources, Inc.
February 19, 2016
Page 11

that irreparable harm to Jefferies will result in the event the Company fails, within 10 days of the receipt of a written demand from Jefferies, to pay any of the fees payable pursuant to Section 4 hereof, and in such event the Company agrees that Jefferies may obtain, at its discretion, and in addition to any other remedies available to it, at law or in equity, either specific performance or summary judgment in lieu of complaint from any such court. The Company also hereby consents to personal jurisdiction, service and venue in any court in which any Action (as defined in <u>Schedule A</u>) is brought by any third party against Jefferies or any other Indemnified Person.

      12.    <u>Payments</u>. All payments to be made to Jefferies hereunder shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. Such fee may be paid by the Company in the form of a "gross spread" or a similar underwriting discount, if Jefferies' role hereunder is that of an underwriter or an initial purchaser. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. The Company's obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim. The Company agrees that in respect of any M&A Transaction that is subject to the terms hereof, the Company shall not close such M&A Transaction without paying in full all amounts then owed to Jefferies pursuant to this Agreement.

      13.    <u>Announcements, etc</u>. The Company agrees that Jefferies may, following the announcement or disclosure of a Transaction, describe the Transaction in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the Transaction and using the Company's name and logo in connection therewith. The Company agrees that any press release it may issue announcing a Transaction will, at Jefferies' request, contain a reference to Jefferies' role as financial advisor to the Company in connection with the Transaction in form and substance reasonably satisfactory to Jefferies.

      14.    <u>Notices</u>. Notice required to be given in writing pursuant to any of the provisions of this Agreement shall be sent by next-day delivery using a nationally-recognized overnight courier or hand-delivered (a) if to the Company, at its address set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

      15.    <u>Miscellaneous</u>. This Agreement amends and restates the prior agreement between the parties hereto dated January 4, 2016 and constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all other prior agreements and understandings, both written and oral, between the parties hereto with respect to the subject matter hereof; *provided however* that the parties hereto acknowledge and agree that the confidentiality agreement dated January 4, 2016 between such parties shall remain in full force and effect, and shall apply to information provided pursuant hereto. This Agreement may not be amended or modified, except in writing signed by each party hereto. This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested. Any attempted assignment of this Agreement made without such consent shall be null and void *ab initio*. This Agreement is solely for the benefit of the Company, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons and no other party shall be a third party beneficiary to, or otherwise acquire or have any rights under or by virtue

Warren Resources, Inc.
February 19, 2016
Page 12

of, this Agreement; *provided* that Jefferies may, in the performance of its services hereunder, procure the services of other members of the Jefferies Group (as defined above), which members shall be entitled to the benefits and be subject to the terms of this Agreement.  If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof.  Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.  This Agreement may be executed in facsimile or other electronic (including portable document format (PDF) counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.  This Agreement has been reviewed by each of the signatories hereto and its counsel.  There shall be no construction of any provision against Jefferies because this Agreement was drafted by Jefferies, and the parties waive any statute or rule of law to such effect.

     16.   <u>Prior Engagement Letter</u>.  The parties hereto acknowledge and agree that (i) the Engagement Letter dated March 16, 2015 between the parties hereto relating to among other things, a potential restructuring of the Company's 9.000% Senior Notes due 2022 (the "<u>Prior Engagement Letter</u>") is and has been terminated, (ii) notwithstanding any provision of the Prior Engagement Letter or any other agreement, all surviving provisions of the Prior Engagement Letter (other than Sections 3, 6, 9, 10, 11, 13, 14, 15 and 16 thereof and Schedule A thereof) are hereby terminated, and accordingly shall be of no further force or effect, (iii) neither party thereto shall have any further liability under any terminated provisions of the Prior Engagement Letter and (iv) upon and after the execution hereof, there shall be no obligation to pay any fee pursuant to the Prior Engagement Letter, and Jefferies hereby forever releases and discharges the Company from any and all such fee payment obligations under the Prior Engagement Letter effective upon the execution of this Agreement.

     17.   <u>Patriot Act</u>.  Jefferies hereby notifies the Company that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "<u>Patriot Act</u>"), it is required to obtain, verify and record information that identifies the Company in a manner that satisfies the requirements of the Patriot Act.  This notice is given in accordance with the requirements of the Patriot Act.

(Signature page follows)

Warren Resources, Inc.
February 19, 2016
Page 13


      Please sign below and return to Jefferies to indicate the Company's acceptance of the terms set forth herein, and once executed by each of Jefferies and the Company, this Agreement shall constitute a binding agreement between the Company and Jefferies as of the date first written above.

Sincerely,

JEFFERIES LLC

By: _____
    Name: Managing Director
    Title: Stephen Straty


Accepted and Agreed as of the date first written above:

WARREN RESOURCES, INC.
On behalf of its present and future
subsidiaries and any entity used thereby to facilitate
the transactions contemplated hereby

By: _____
    Name: James A. Watt
    Title: President and Chief Executive Officer

SCHEDULE A

Reference is made to the Agreement between Jefferies and the Company to which this Schedule A is attached.  Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in such Agreement.

As further consideration under the Agreement, the Company agrees to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, regardless of whether resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Company shall not be responsible for any Losses that arise out of or are based on any action of or failure to act by any Indemnified Person to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted directly from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Company).

The Company agrees that no Indemnified Person shall have any liability to the Company or its owners, parents, affiliates, securityholders or creditors for any Losses, except to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted directly from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Company).

The Company agrees that it will not settle or compromise or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (regardless of whether any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If, for any reason (other than by reason of a final, non-appealable judgment by a court as to the gross negligence or willful misconduct of Jefferies as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Company agrees to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Company and its securityholders, on the one hand, and by Jefferies, on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Company and its securityholders, on the one hand, and Jefferies, on the other, but also the relative fault of the Company and its securityholders on the one hand, and Jefferies, on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the

Schedule A - Page 1

SCHEDULE A

services rendered pursuant to the Agreement.  Relative benefits to the Company and its securityholders, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The Company agrees to reimburse the Indemnified Persons for all reasonable costs and expenses (including, without limitation, reasonable fees and expenses of counsel) incurred by the Indemnified Persons (including all such costs and expenses incurred to enforce the terms of this Schedule A) as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, regardless of whether in connection with litigation in which any Indemnified Person is a named party; provided that, if any such reimbursement is for expenses relating to a Loss that is determined, by a final, non-appealable judgment by a court, to have resulted directly from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Company), such Indemnified Person shall promptly repay such amount to the Company.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or completion of Jefferies' services thereunder for a period of two (2) years, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Company and successors or assigns to the Company's business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.