# Exhibit B

## Morgner Declaration

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| WARREN RESOURCES, INC., *et al.*,[1] | § | Case No. 16-32760 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |

**DECLARATION OF RICHARD MORGNER
IN SUPPORT OF DEBTORS' APPLICATION
FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
RETENTION AND EMPLOYMENT OF JEFFERIES LLC
AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS
IN POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a),
*NUNC PRO TUNC* TO THE PETITION DATE, (II) WAIVING CERTAIN
TIME-KEEPING REQUIREMENTS AND (III) GRANTING RELATED RELIEF**

I, Richard Morgner, hereby declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1.      I am a Managing Director and Joint Global Head of Restructuring & Recapitalization at Jefferies LLC ("Jefferies"), an investment banking and financial advisory firm with principal offices located at 520 Madison Avenue, New York, New York 10022, as well as at other locations worldwide.

2.      I submit this Declaration (this "Declaration") in support of the application (the "Application")[2] of the above-captioned debtors and debtors in possession in these proceedings (collectively, the "Debtors") for an order authorizing the Debtors to retain and employ Jefferies

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Warren Resources, Inc. (4080); (ii) Warren E&P, Inc. (4052); (iii) Warren Resources of California, Inc. (0072); (iv) Warren Marcellus, LLC (0150); (v) Warren Energy Services, LLC (4748); and (vi) Warren Management Corp.  The Debtors' service address is: 11 Greenway Plaza, Suite 3050, Houston, Texas 77046.

[2] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Application.

as their investment banker, *nunc pro tunc* to the Petition Date, pursuant to the terms and subject to the conditions of the Engagement Letter.

3.      Except as otherwise noted, I have personal knowledge of the matters set forth herein, and, if called as a witness, I would testify thereto.  Certain of the disclosures herein, however, relate to matters within the personal knowledge of other professionals at and representatives of Jefferies and are based on information provided by such professionals.

### Jefferies' Qualifications

4.      I believe that Jefferies and the professionals it employs are uniquely qualified to advise the Debtors on the matters for which Jefferies is proposed to be employed in a cost-effective, efficient, and timely manner.

5.      Jefferies is a registered broker-dealer with the United States Securities and Exchange Commission and a member of the Boston Stock Exchange, the International Stock Exchange, the Financial Industry Regulatory Authority, the Pacific Stock Exchange, the Philadelphia Stock Exchange and the Securities Investor Protection Corporation.  Jefferies was founded in 1962 and is a wholly-owned subsidiary of Jefferies Group LLC, which, together with its subsidiaries, has gross assets of approximately $45 billion and approximately 3,900 employees in more than 30 offices around the world.

6.      Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services relating to the following: (a) general financial advice; (b) mergers, acquisitions, and divestitures; (c) special committee assignments; (d) capital raising; and (e) corporate restructurings.  Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out of court and in chapter 11 proceedings.  Jefferies has advised debtors, creditor and equity constituencies, and purchasers in

2

numerous reorganizations in the United States and worldwide.  Since 2007, Jefferies has been involved in more than 100 restructurings representing more than $200 billion in restructured liabilities.

7.      Jefferies has extensive experience in reorganization cases, including, without limitation, energy and exploration and production industry experience, and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors, creditors, and creditors' committees throughout the United States.  Jefferies has advised on the following chapter 11 cases, among others:  *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del. Apr. 21, 2016); *In re Sundevil Power Holdings, LLC*, No. 16-10369 (KJC) (Bankr. D. Del. Apr. 7, 2016); *In re Arch Coal, Inc.*, No. 16-40120-705 (Bankr. E.D. Mo. Mar. 21, 2016); *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015); *In re The Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. June 10, 2015); *In re EveryWare Global, Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. May 20, 2015); *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. Mar. 26, 2015); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. June 10, 2014); *In re Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 23, 2014); *In re Event Rentals, Inc.*, No. 14-10282 (PJW) (Bankr. D. Del. Mar. 14, 2014); *In re Velti Inc.*, No. 13-12878 (PJW) (Bankr. D. Del. Dec. 2, 2013); *In re Excel Maritime Carriers Ltd.*, No. 13-23030 (Bankr. S.D.N.Y. July 1, 2013) (RDD); *In re OnCure Holdings, Inc.*, No. 13-11540 (KG) (Bankr. D. Del. June 14, 2013); *In re GMX Res. Inc.*, No. 13-11456 (SAH) (Bankr. W.D. Okla. May 17, 2013).

HOU:3696428.1

8.      Jefferies is also familiar with the Debtors' financial and business operations. Jefferies has been employed by the Debtors on various matters since mid-2014[3] and, specifically, has advised the Debtors in connection with and was active in the negotiation of the Restructuring Support Agreement (as defined in the First Day Declaration), which outlines the proposed restructuring of the Debtors being pursued in these chapter 11 cases.  Jefferies' participation in the negotiation of the Restructuring Support Agreement has given Jefferies a great deal of familiarity with the Debtors' businesses and goals in these chapter 11 cases.

## Jefferies' Disinterestedness

9.      In connection with its retention by the Debtors, Jefferies undertook to determine whether Jefferies, its principals and professionals: (a) have any connection with the Debtors, their affiliates, their creditors or any other parties in interest in these chapter 11 cases; or (b) have an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders.

10.      To check potential connections with the Debtors and other parties in interest in these chapter 11 cases, Jefferies has searched to determine whether it had any relationships with the entities identified by the Debtors and its representatives as potential parties in interest (the "Potential Parties in Interest").   The Potential Parties in Interest reviewed by Jefferies included:

(a)      The Debtors and the Debtors' current officers and directors;

(b)      The Debtors' top 30 list of unsecured creditors on a consolidated basis;

(c)      The Debtors' utility providers;

---

[3]   The current February 19, 2016 Engagement Letter amended and restated a prior engagement letter dated January 4, 2016.  Additionally, Jefferies was previously engaged by the Company pursuant to an engagement letter signed in mid-2014 in connection with efforts to restructure the Company's 9.000% Senior Notes (the "2014 Engagement Letter").   Jefferies was also previously engaged by the Company in connection with certain acquisition and financing matters pursuant to a July 24, 2014 engagement letter.

      (d)     The DIP Lender;

      (e)     The agents and known lenders under the Debtors' First and Second Lien Credit Facilities;

      (f)     The Trustee and certain known holders of the Debtors' senior unsecured notes

      (g)     Parties involved in litigation with the Debtors;

      (h)     Certain regulatory agencies related to the Debtors;

      (i)     Professionals known by AK to be engaged by Parties-in-Interest;

      (k)     Financial Institutions, such as banks and insurance companies, doing business with the Debtors; and

      (l)     Certain known staff of the Bankruptcy Court and Office of the United States Trustee.

11.     Specifically, Jefferies entered the names of the Potential Parties in Interest into a database containing the names of Jefferies' current and former investment banking clients. To the extent that this inquiry has revealed that certain Potential Parties in Interest were current or former investment banking clients of Jefferies within the past three years, these parties have been identified on a list (the "Client Match List") annexed hereto as Schedule 1. Through the information generated from the aforementioned inquiry and through follow-up inquiries to Jefferies professionals responsible for certain clients listed on the Client Match List, Jefferies has determined that its representation of the clients on the Client Match List, if any, concerned matters unrelated to the Debtors. As to the Potential Parties in Interest not identified on the Client Match List, Jefferies has not been employed by or rendered advisory services to any such parties within the past three years.

12.     As part of its diverse global activities, Jefferies is involved in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment

bankers, and financial consultants, some of whom may represent claimants and parties in interest in these chapter 11 cases.   Further, Jefferies has in the past, and may in the future, advise and/or be represented by several attorneys, law firms and other professionals, some of whom may be involved in these chapter 11 cases.  Finally, Jefferies has in the past, and will likely in the future, be working with or against other professionals involved in these chapter 11 cases in matters wholly unrelated to these chapter 11 cases.    Based upon our current knowledge of the professionals involved in these chapter 11 cases, and, to the best of my knowledge, none of these business relationships constitute interests adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders in matters upon which Jefferies is to be employed, and none are in connection with these chapter 11 cases.

13.     Jefferies is a global investment banking firm with broad activities covering, in addition to its investment banking and financial advisory practice, trading in equities, convertible securities, and corporate bonds.  With more than 80,000 customer accounts and thousands of relationships and transactions around the world, it is possible that one or more of Jefferies' clients or a counterparty to a securities transaction may hold a claim or interest or otherwise be Potential Parties in Interest in these chapter 11 cases and that Jefferies and/or its affiliates may have other business relationships and/or connections with such Potential Parties in Interest.  Further, as a major market maker in equity securities as well as a major trader of corporate bonds and convertible securities, including those of creditors or parties in interest in these chapter 11 cases, Jefferies regularly enters into securities transactions with other registered broker-dealers as a part of its daily activities.  Some of these counterparties may be creditors, equity holders or other parties in interest in these cases. Jefferies believes that none of these business relationships constitute interests adverse to the interests of the Debtors' estates or of any class of creditors or equity

HOU:3696428.1

security holders in matters upon which Jefferies is to be employed, and none are in connection with these chapter 11 cases.

14.     In addition, as of the date hereof, Jefferies and its affiliates have thousands of employees worldwide.  It is possible that certain of Jefferies' and its affiliates' respective directors, officers and employees may have had in the past, may currently have, or may in the future have connections to (i) the Debtors, (ii) the Potential Parties in Interest and/or (iii) funds or other investment vehicles that may own debt or securities of the Debtors or other Potential Parties in Interest.  Furthermore, in addition to the parties listed on Schedule 1, Jefferies may also represent, or may have represented, affiliates, equity holders and/or sponsors of the Potential Parties in Interest.  Certain of the Potential Parities in Interest may also be vendors or insurers of Jefferies and/or have other non-investment banking relationships with Jefferies.  Jefferies may also represent, or may have represented in the past, committees or groups of lenders or creditors in connection with certain restructuring or refinancing engagements, which committees or groups include, or included, entities that appear on the Potential Parties in Interest list.  Jefferies believes that none of these business relationships constitute interests adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders in matters upon which Jefferies is to be employed, and none are in connection with these chapter 11 cases.

15.     Certain affiliates of Jefferies serve as managers for a number of investment vehicles (collectively, the "Managed Funds").  The Managed Funds are principally intended for investments by third parties unrelated to Jefferies.  However, such investors may also include financial institutions (some of which may be parties in interest in these chapter 11 cases), affiliates of Jefferies, or their respective officers and employees (some of whom may be Jefferies' employees providing services in connection with these chapter 11 cases).  Jefferies' employees

7

working in connection with these chapter 11 cases have no control over or involvement in investment decisions made for the Managed Funds.   With respect to the Managed Funds, Jefferies makes the following additional disclosures:

(a)     Among other things, the Managed Funds are (i) active direct investors in a number of portfolio companies (the "Equity Investments") and (ii) investors in a variety of debt instruments and mezzanine loans or similar securities (the "Income Investments" and, together with the Equity Investments, the "Portfolio Holdings"); and

(b)     The fund managers of the Managed Funds maintain control over investment decisions with respect to the Portfolio Holdings. Many financial institutions and parties in interest who may be involved in these chapter 11 cases may also be investors in the Managed Funds. Moreover, the Managed Funds may invest from time to time in Portfolio Holdings relating to the Debtors or parties in interest in these chapter 11 cases. In order to comply with securities laws and to avoid any appearance of impropriety, the employees of the Managed Funds are strictly separated from the employees of Jefferies. Jefferies maintains a strict separation between its employees assigned to these chapter 11 cases and employees involved in the management of Jefferies' investment banking division, on the one hand, and other employees of Jefferies (e.g., sales and trading employees) and its affiliates (including the employees of the Managed Funds), on the other hand. This separation is maintained through the use of information walls. These information walls include physical and technological barriers, compliance, and surveillance mechanisms and policies and procedures designed to prevent confidential information from being shared improperly. Consequently, as no confidential information concerning the Debtors is permitted to be communicated to any persons working for the Managed Funds, Jefferies does not believe that the relationships outlined above constitute interests adverse to the estates or render Jefferies not disinterested in these chapter 11 cases.

16.     In addition, as part of its regular business operations, Jefferies may trade securities and other instruments of the Debtors on behalf of third parties (some of whom may be parties in interest in these chapter 11 cases).   Jefferies may also trade securities and other instruments of the Potential Parties in Interest on behalf of itself or its affiliates or third parties.   Any such trading operations are separated from Jefferies' investment banking department, and its managing directors and employees (including the investment banking professionals working on these chapter 11 cases) by an information barrier.

8

17.     The Debtors have numerous creditors and relationships with a large number of individuals and entities that may be parties in interest in these chapter 11 cases.  Consequently, although every reasonable effort has been made to discover Jefferies' connections with the Potential Parties in Interest, Jefferies is unable to state with certainty whether any of its clients or an affiliated entity of a client holds a claim or otherwise is a party in interest in these chapter 11 cases.   If Jefferies discovers any information that is contrary or pertinent to the statements made herein, Jefferies will promptly disclose such information to the Court.  Additionally, as noted above, Jefferies is part of a global investment banking firm and thus has several legally separate and distinct foreign and domestic affiliates.  Although employees of certain affiliates may sometimes assist Jefferies in connection with a restructuring engagement, as Jefferies is the only entity being retained in these cases, we have researched only the electronic client files and records of Jefferies, not of all of its affiliates, to determine connections with any Potential Parties in Interest.

18.     Jefferies does not advise, has not advised and will not advise any entity other than the Debtors in matters related to these chapter 11 cases.  Jefferies will, however, continue to provide professional services to entities or persons that may be creditors of the Debtors or parties in interest in these chapter 11 cases, provided that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

19.     Except as otherwise set forth herein, to the best of my knowledge, information, and belief, neither Jefferies nor any employee of Jefferies:  (a) is a creditor, equity security holder or an insider of the Debtors; or (b) is or was, within two years before the Petition Date, a director, officer, or employee of any of the Debtors.  In addition, none of the Jefferies professionals expected to assist the Debtors in these chapter 11 cases are related or connected to

9

any United States Bankruptcy Judge for this District, the U.S. Trustee, or any person employed in the office of the U.S. Trustee. Accordingly, Jefferies believes to the best of its knowledge and belief that it is disinterested and does not hold or represent any interest adverse to the estate.

**Professional Compensation**

20.     During the 90-day period prior to the commencement of these cases, Jefferies was paid in the ordinary course certain monthly and other fees and expense reimbursements under the Engagement Letter. Specifically, Jefferies was paid: (a) $128,317.23 on account of its Monthly Fee and related expense reimbursements and $300,000.00 on account of its preparation and delivery of a strategic alternatives report in accordance with Paragraph 4(f) of the Engagement Letter on April 6, 2016 (which was shortly after the February 19, 2016 Engagement Letter was executed in mid to late March 2016); (b) $126,811.98 on account of its April Monthly Fee and related expense reimbursements on April 21, 2016; and (c) $132,245.10 on account of its May Monthly Fee and related expense reimbursements on May 18, 2016. In addition, on March 16, 2016, Jefferies was also paid $300,000.00 on account of fees due under the 2014 Engagement Letter (which letter and all fee obligations were thereafter terminated by entry into the current Engagement Letter). As of the Petition Date, no other amounts were due and payable to Jefferies under the Engagement Letter.

21.     The Fee and Expense Structure set forth in the Application is consistent with Jefferies' typical fee for work of this nature. The fees are set at a level designed to compensate Jefferies fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses. It is Jefferies' policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

22.     It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys.  Jefferies' restructuring professionals, when formally retained in chapter 11 cases, and when required by local rules, do, and in these cases will, keep time records in half-hour increments describing their daily activities and the identity of persons who performed such tasks.  Jefferies will also supplement this information with a list of the non-restructuring professionals who assist the restructuring department on this matter but who do not, as a matter of general practice, keep records in the same manner.

23.     The Fee and Expense Structure is comparable to those generally charged by investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee, and contingency amounts which are tied to the consummation and closing of a transaction as contemplated in the Engagement Letter.

24.     In addition, the indemnification provisions of the Engagement Letter reflect standard and customary terms of engagement contained in Jefferies' engagement letters both in and outside of bankruptcy cases.  Based on my experience in the market for investment banking services, these indemnification provisions are similar to the indemnification provisions in the engagement letters of other similarly situated investment banking firms in engagements both in and outside of bankruptcy.

25.     The Engagement Letter was negotiated at arm's length and in good faith, and I believe that the provisions contained therein are reasonable terms and conditions of Jefferies' employment by the Debtors.  With respect to the Engagement Letter's indemnification provisions, unlike the market for other professionals that a debtor or committee may retain, indemnification is a standard term of the market for investment bankers.  The indemnity,

11

moreover, is comparable to those generally obtained by investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court.

26.     Other than as set forth above and in the Engagement Letter, there is no proposed arrangement between the Debtors and Jefferies for compensation to be paid in these cases. Jefferies has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

27.     The foregoing constitutes the statement of Jefferies pursuant to section 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 5002.


[*Remainder of Page Intentionally Left Blank*]

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 17, 2016

Respectfully submitted,

Richard Morgner
Managing Director
JEFFERIES LLC

## Schedule 1

### Client Match List

GSO Capital Partners LP
Redwood Master Fund Ltd.