**<u>Exhibit A</u>**

**Retention Application**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| WARREN RESOURCES, INC., *et al.*,[1] | § | Case No. 16-32760 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |

## DEBTORS' APPLICATION FOR
### ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF JEFFERIES LLC AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), *NUNC PRO TUNC* TO THE PETITION DATE, (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS AND (III) GRANTING RELATED RELIEF

---

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON <u>JULY 13, 2016, AT 9:30 A.M. CENTRAL TIME</u>, IN COURTROOM 404, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK AVENUE, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Warren Resources, Inc. (4080); (ii) Warren E&P, Inc. (4052); (iii) Warren Resources of California, Inc. (0072); (iv) Warren Marcellus, LLC (0150); (v) Warren Energy Services, LLC (4748); and (vi) Warren Management Corp. The Debtors' service address is: 11 Greenway Plaza, Suite 3050, Houston, Texas 77046.

Warren Resources, Inc. ("Warren Resources") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] respectfully submit the declaration of Richard Morgner, Managing Director and Joint Global Head of Restructuring & Recapitalization at Jefferies (the "Morgner Declaration"), attached hereto as Exhibit B, and state the following in support of this application (this "Application"):

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"):  (a) authorizing the Debtors to retain and employ Jefferies LLC ("Jefferies") as their investment banker, *nunc pro tunc* to the Petition Date, pursuant to the terms and subject to the conditions of that certain engagement letter between Jefferies and the Debtors dated as of February 19, 2016, a copy of which is annexed to the Order as Exhibit 1 (the "Engagement Letter");[3] (b) waiving and modifying certain of the time keeping requirements of Bankruptcy Rule 2016(a), any guidelines (the "Trustee Guidelines") of the United States Trustee (the "U.S. Trustee") and any other guidelines regarding submission and approval of fee applications; and (c) granting related relief.  The Engagement Letter describes:  (a) the various services that the Debtors seek Jefferies to perform on their behalf during these chapter 11 cases; and (b) the terms and conditions of Jefferies' proposed engagement by the Debtors.

---

[2]  A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this application and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of James A. Watt, Chief Executive Officer and Chief Restructuring Officer of Warren Resources, et al., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 16] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on June 2, 2016 (the "Petition Date").

[3]  Capitalized terms not otherwise defined in this Application shall have the meanings ascribed to them in the Engagement Letter.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue is proper pursuant to 28 U.S.C. § 1408.

4.      The statutory and legal bases for the relief requested herein are sections 327(a), 328(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Bankruptcy Rules").

## Jefferies' Qualifications and the Need for Jefferies' Services

5.      The Debtors submit this Application because of their need to retain a qualified investment banker to assist them in the critical tasks associated with guiding the Debtors through these chapter 11 cases.  The Debtors believe that their retention of an investment banker is necessary and appropriate to enable them to evaluate the financial and economic issues raised by the Debtors' chapter 11 proceedings, successfully consummate a restructuring and to thereby fulfill their statutory duties.

6.      The Debtors selected Jefferies as their investment banker in these cases based upon Jefferies' extensive experience in matters involving complex financial restructurings and Jefferies' excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.

7.      As set forth in the Morgner Declaration, Jefferies is a full-service investment banking firm, with approximately 3,900 employees in more than 30 offices around the world.

Jefferies and its senior professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. Jefferies and its professionals are providing or have provided investment banking, financial advisory and other services in connection with the following recent cases: *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del. Apr. 21, 2016); *In re Sundevil Power Holdings, LLC*, No. 16-10369 (KJC) (Bankr. D. Del. Apr. 7, 2016); *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015); *In re The Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. June 10, 2015); *In re EveryWare Global, Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. May 20, 2015); *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. Mar. 26, 2015); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. June 10, 2014); *In re Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 23, 2014); *In re Event Rentals, Inc.*, No. 14-10282 (PJW) (Bankr. D. Del. Mar. 14, 2014); *In re Velti Inc.*, No. 13-12878 (PJW) (Bankr. D. Del. Dec. 2, 2013); *In re Reddy Ice Holdings, Inc. and Reddy Ice Corporation*, Case Nos. 12-32349 and 12-32350 (SGJ) (Bankr. N.D. Tex. June 1, 2012); *In re ATP Oil & Gas Corp.*, No. 12-36187 (MI) (Bankr. S.D. Tex. Oct. 4, 2012); *In re Baytown Navigation, Inc.*, No. 11-35926 (KKB) (Bankr. S.D. Tex. Aug. 22, 2011).

8. Jefferies is also familiar with the Debtors' financial and business operations. Jefferies has been employed by the Debtors on various matters since mid-2014[4] and, specifically,

---

[4] The current February 19, 2016 Engagement Letter amended and restated a prior engagement letter dated January 4, 2016. Additionally, Jefferies was previously engaged by the Company pursuant to an engagement letter signed in mid-2014 in connection with efforts to restructure the Company's 9.000% Senior Notes (the "2014 Engagement

has advised the Debtors in connection with and was active in the negotiation of the Restructuring Support Agreement (as defined in the First Day Declaration), which outlines the proposed restructuring of the Debtors being pursued in these chapter 11 cases. Jefferies' participation in the negotiation of the Restructuring Support Agreement has given Jefferies a great deal of familiarity with the Debtors' businesses and goals in these chapter 11 cases. The Debtors thus believe that Jefferies is both well-qualified and uniquely able to advise the Debtors in these chapter 11 cases in an efficient and timely manner.

## Scope of Services

9.      Subject to the Court's approval, the Debtors anticipate that Jefferies will perform the following investment banking services, among others, pursuant to the Engagement Letter, as mutually agreed upon by Jefferies and the Debtors and as appropriate:[5]

(a)     becoming familiar with and analyzing the business, operations, properties, financial condition and prospects of the Company;

(b)     advising the Company on the current state of the "restructuring market";

(c)     assisting and advising the Company on developing a general strategy for accomplishing a Restructuring;

(d)     assisting the Company in implementing a Restructuring;

(e)     assisting and advising the Company in evaluating and analyzing a Restructuring including the value of the securities or debt instruments, if any, that may be issued in any such Restructuring;

(f)     assisting the Company with the sale and/or placement, whether in one or more public or private transactions, of common equity, preferred equity and/or equity-linked securities of the Company;

---

Letter"). Jefferies was also previously engaged by the Company in connection with certain acquisition and financing matters pursuant to a July 24, 2014 engagement letter.

[5]  To the extent there is any inconsistency between this summary of the services set forth in the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

(g)     assisting the Company and providing financial advice in connection with an M&A Transaction including, without limitation, a merger, reverse merger, liquidation, stock purchase, asset purchase, recapitalization, reorganization, consolidation, amalgamation, sale under section 363 of the Bankruptcy Code or other transaction;

(h)     advising the Company in connection with any Financing including, without limitation, a placement of the Debtors' Equity Securities or Debt;

(i)     if requested by the Company, in connection with an M&A Transaction, rendering a written fairness opinion (an "Opinion") in accordance with Jefferies' customary practices, as to the fairness, from a financial point of view, to the Company or holders of the Company's common stock, as applicable, of such M&A Transaction; and

(j)     Rendering such other financial advisory services as may from time to time be agreed upon by the Company and Jefferies.

10.     The Debtors do not believe that the services to be rendered by Jefferies will be duplicative of the services performed by any other professional, and Jefferies will work together with the other professionals retained by the Debtors to minimize and avoid duplication of services.

## Professional Compensation

11.     As set forth more fully in the Engagement Letter, Jefferies and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee and Expense Structure"):[6]

(a)     **Monthly Fee**.  A monthly fee (the "Monthly Fee") equal to $125,000.00 payable on the 15th day of each month until the expiration or termination of the Engagement Letter.

(b)     **Restructuring Fee**.  Upon the consummation of a Restructuring, a fee (the "Restructuring Fee") equal to 95 basis points (0.95%) of the aggregate principal amount of all indebtedness subject to the Restructuring.

---

[6]  To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

HOU:3696428.1

      (c)    **M&A Fee**.  Upon the consummation of an M&A Transaction, a fee (the "M&A Fee") equal to 95 basis points (0.95%) of the Transaction Value of such M&A Transaction.

      (d)    **Financing Fee**.  Upon the consummation of each Financing, a fee equal to the sum, without duplication of:

          (i)    2.0% of the aggregate principal amount, without duplication, of all newly issued first lien Debt issued, incurred or made available to be issued or incurred pursuant to such Financing, other than in exchange for any Existing Senior Debt;

          (ii)    3.0% of the aggregate principal amount, without duplication, of all other newly issued Debt issued, incurred or made available to be issued or incurred pursuant to such Financing, other than in exchange for any Existing Senior Debt; and

          (iii)    4.5% of the aggregate gross proceeds of any newly issued Equity Securities issued pursuant to such Financing, other than in exchange for any Existing Senior Debt.

12.    To the extent a Transaction qualifies as both a Restructuring and an M&A Transaction, Jefferies shall be paid the greater (but not both) of the Restructuring Fee and M&A Fee.  In addition, the Engagement Letter contains certain other fees which are not likely to arise in connection with these cases and/or for work that was performed prior to the commencement of theses cases.  The fees described above, however, are the only fees that the Debtors and Jefferies anticipate will arise in connection with these cases.

13.    In addition to any fees that may be paid to Jefferies under the Engagement Letter, the Debtors shall reimburse Jefferies for any reasonable out-of-pocket expenses incurred in connection with its engagement by the Debtors including, without limitation, the reasonable fees and expenses of any counsel retained by Jefferies in connection with these cases.

14.    During the pendency of these chapter 11 cases, Jefferies shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

15.     The Debtors believe that the Fee and Expense Structure set forth in the Engagement Letter is reasonable.  The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Jefferies and the fee structures typically utilized by leading investment banking firms of similar stature to Jefferies for comparable engagements, both in and out of court.  The Fee and Expense structure is consistent with Jefferies' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  Moreover, the Fee and Expense Structure is reasonable in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) Jefferies' substantial experience with respect to investment banking services; and (d) the nature and scope of work to be performed by Jefferies in these cases.  In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.  Similar fixed and contingency fee arrangements have been approved and implemented in other recent large chapter 11 cases. *See, e.g.*, *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015) (authorizing a similar mixed fixed and contingency fee arrangement)*; In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015) (same); *In re ATP Oil & Gas Corp.*, Case No. 12-36187 (Bankr. S.D. Tex. Aug. 17, 2012, Oct. 4, 2012) (same); *In re Seahawk Drilling, Inc.*, Case No. 11-20089 (Bankr. S.D. Tex. Feb. 12, 2011, Feb. 14, 2011) (same); *In re Gulf Coast Oil Corp.*, Case No. 08-50213 (Bankr. S.D. Tex. Sept. 30, 2008) (same).[7]

---

[7] Because of the voluminous nature of the applications and orders cited herein, such applications and orders have not been attached to this Application.  Copies of these applications and orders are available upon request of the Debtors' proposed counsel.

16.     Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, Jefferies does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.  Given the foregoing and that Jefferies' compensation is based on fixed fees, the Debtors request that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any order of this Court, or any other guidelines regarding the submission and approval of fee applications, Jefferies' professionals be excused from maintaining time records as set forth in Bankruptcy Rule 2016(a) and the Trustee Guidelines in connection with the services to be rendered pursuant to the Engagement Letter. Jefferies will nonetheless maintain reasonably detailed summary time records in one-half hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.  Courts in other large chapter 11 cases have excused flat-fee professionals from time-keeping requirements under similar circumstances.  *See, e.g., In re Aspect Software Parent, Inc.*, Case No. 10597 (MFW) (Bankr. D. Del. Apr. 21, 2016) (requiring Jefferies only to keep reasonably detailed summary time records in one-half hour increments while indicating the total hours incurred by each professional for each day and briefly describing the nature of the work performed); *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015) (same)*; In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015) (same); *In re ATP Oil & Gas Corp.*, Case No. 12-36187 (Bankr. S.D. Tex. 2012) (same).

## Indemnification of Jefferies

17.     As part of the overall compensation payable to Jefferies under the terms of the Engagement Letter, the Engagement Letter provides for certain indemnification obligations to

9

Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other controlling persons, to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs and expenses, as incurred, related to or arising out of or in connection with Jefferies' services under the Engagement Letter.[8]  Such terms of indemnification, as modified by the Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Jefferies in chapter 11 cases.  *See, e.g.*, *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015) (approving identical indemnification provisions); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015) (same); *In re EveryWare Global, Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. May 20, 2015) (same); *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. Mar. 26, 2015) (same); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. June 10, 2014) (same); *In re ATP Oil & Gas Corp.*, Case No. 12-36187 (Bankr. S.D. Tex. 2012) (same).

### Jefferies' Disinterestedness

18.     Jefferies has informed the Debtors that as of the date hereof, except as set forth in the Morgner Declaration: (a) Jefferies has no connection with the Debtors, their creditors, equity security holders or other parties in interest in these chapter 11 cases; (b) Jefferies does not have or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (c) Jefferies (i) is not a creditor, equity security holder or an insider of the Debtors and (ii) is not or was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors.  In addition, none of the Jefferies

---

[8]  To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Schedule A to the Engagement Letter, the terms of the Engagement Letter shall control.

professionals expected to assist the Debtors in these chapter 11 cases are related or connected to any United States Bankruptcy Judge for this District, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

19.     During the 90-day period prior to the commencement of these cases, Jefferies was paid in the ordinary course certain monthly and other fees and expense reimbursements under the Engagement Letter.  Specifically, Jefferies was paid:  (a) $128,317.23 on account of its Monthly Fee and related expense reimbursements and $300,000.00 on account of its preparation and delivery of a strategic alternatives report in accordance with Paragraph 4(f) of the Engagement Letter on April 6, 2016 (which was shortly after the February 19, 2016 Engagement Letter was executed in mid to late March 2016); (b) $126,811.98 on account of its April Monthly Fee and related expense reimbursements on April 21, 2016; and (c) $132,245.10 on account of its May Monthly Fee and related expense reimbursements on May 18, 2016.  In addition, on March 16, 2016, Jefferies was also paid $300,000.00 on account of fees due under the 2014 Engagement Letter (which letter and all fee obligations were thereafter terminated by entry into the current Engagement Letter).   As of the Petition Date, no other amounts were due and payable to Jefferies under the Engagement Letter.

20.     The Debtors have been advised that Jefferies has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with these chapter 11 cases in accordance with section 504(a) of the Bankruptcy Code.

21.     Based on the foregoing, the Debtors believe that Jefferies is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and utilized in section 328(c) of the Bankruptcy Code.

11

## Basis for Relief

22.     The Debtors seek entry of an order authorizing them to retain and employ Jefferies pursuant to sections 327 and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Court's approval, "may employ one or more attorneys, accountants . . . or other professional persons."  Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Court's approval, "may employ or authorize the employment of a professional person under section . . . 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

23.     Given the numerous issues that Jefferies may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, Jefferies' commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Jefferies' services for engagements of this nature, the Debtors submit that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.  The Debtors also believe that the Fee and Expense Structure appropriately reflects (a) the nature and scope of Jefferies' services, (b) Jefferies' substantial experience with respect to investment banking services and (c) the fee structures typically utilized by Jefferies and other investment banks, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

24.     As set forth above, and notwithstanding approval of the Engagement Letter under section 328(a) of the Bankruptcy Code, Jefferies intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the applicable

12

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of this Court, with certain limited modifications as set forth herein. Notwithstanding the foregoing, Jefferies agrees that the U.S. Trustee may review Jefferies' compensation under section 330 of the Bankruptcy Code.

25.     Additionally, notwithstanding anything in the Engagement Letter, Jefferies agrees that this Court shall retain exclusive jurisdiction during the pendency of these cases to resolve any disputes concerning the Engagement Letter or the terms of Jefferies retention pursuant to this Application.

26.     Further, the Debtors and Jefferies believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for Jefferies and comparable firms providing investment banking services. Further, as set forth in the Morgner Declaration, such indemnification provisions are standard and customary terms of engagement contained in Jefferies' engagement letters both in and outside of bankruptcy cases and, based on Mr. Morgner's experience, are similar to indemnification provisions in the engagement letters of other similarly situated investment bankers in engagements both in and outside of bankruptcy.

27.     In light of the foregoing, the Debtors submit that the retention of Jefferies is in the best interest of the estates, their creditors, and all parties in interest in these chapter 11 cases. Jefferies has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. The Debtors therefore submit that they have satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support

13

entry of an order authorizing the Debtors to retain and employ Jefferies in these chapter 11 cases on the terms described herein and in the Engagement Letter.

### Notice

28.     The Debtors will provide notice of this motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Prepetition First Lien Lenders and their counsel; (c) the agent under the Prepetition First Lien Credit Agreement; (d) the Prepetition Second Lien Lenders and their counsel; (e) the agent under the Prepetition Second Lien Credit Agreement; (f) counsel for the ad hoc group of Senior Noteholders; (g) the indenture trustee for the Senior Notes; (h) the 30 largest unsecured non-insider creditors of the Debtors (on a consolidated basis); (i) counsel for any official committee of unsecured creditors that may be appointed; (j) the Internal Revenue Service; (k) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002; and (l) the Securities and Exchange Commission.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

29.     No prior request for the relief sought in this Application has been made to this or any other court.


WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and granting such other relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

14

Dated:  June 17, 2016
Houston, Texas

James A. Watt
President, Chief Executive Officer and Chief Restructuring
Officer of Warren Resources, Inc., *et al.*